# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| **RICKY GERALD MOORE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:06CV823MLM |
| | ) | |
| **JOHN E. POTTER,** | ) | |
| Postmaster General, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter is before the court pursuant to the Motion for Summary Judgment filed by Defendant John E. Potter, Postmaster General ("Defendant"). [1] Doc. 24. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(c)(1). Doc. 19.

## UNDISPUTED FACTS[2]

Plaintiff Ricky Gerald Moore ("Plaintiff") is a former employee of the United States Postal Service. Plaintiff was assigned as a Casual Letter Carrier at Weathers Station in St. Louis, Missouri, from April 16, 2005, until his separation from service thirty-two days later, on May 18, 2005. The incidents relevant to Plaintiff's separation occurred while he was "on loan" to the Gwen B. Giles Station, in St. Louis, Missouri.

Carolyn Johnson, Supervisor of Customer Services, supervised Plaintiff for two days. Problems she noted with Plaintiff were "time wasting practices such as standing around talking to

---

[1] Plaintiff failed to file a timely response. On August 14, 2007, the court ordered that in the event Plaintiff would choose to file a response that he do so no later than seven days from that date. Doc. 26. Plaintiff has not responded.

[2] The facts are undisputed unless otherwise stated.

other employees instead of getting his mail and going to the street even after being instructed to do so more than once"; Plaintiff "spent approximately an hour in the office for a route that was ready for him to go directly to the street." Also, Plaintiff used foul language towards Ms. Johnson. Ms. Johnson asked Plaintiff to stop speaking to her in "that manner and do his work." Ms. Johnson was advised to take Plaintiff off the clock when Supervisor Betty Travis heard Plaintiff over the telephone speaking to Ms. Johnson "in the manner he did." Ms. Johnson did not recommend that Plaintiff be separated from his employment and did not know why Plaintiff was separated. Ms. Johnson states in an affidavit that Plaintiff's gender had nothing to do with the decisions she made "as [she] didn't make any." Def. Ex. G.

In a memorandum Ms. Johnson stated, in relevant part:

> On 5/13/05 when Mr. Moore arrived at Giles, he spent time talking with other employees instead of reporting to the supervisor for instructions. He was discovered at the accountable cart engaging in conversation and sent to me by Mr. Daggs. Mr. Moore approached me asking for time off to go and get his uniforms. I informed him that he had 6 hours on the street on route 1236 and if he had time after that he could go and get his uniforms. He was instructed to get on the street. This route was already cased and pulled down for him to go to the street. 20 minutes later Mr. Moore was found standing on the dock again engaging in conversation. I asked why he was just standing there instead of loading his vehicle. He replied," Oh, I guess I better back a truck up and load it up." I instructed Mr. Moore to load his vehicle and get on the street. 15 minutes later I went back to the dock to see if Mr. Moore was loading his vehicle, again I found him standing on the dock doing nothing. He was again instructed to load his vehicle and get on the street and informed that he had been on the clock almost an hour and has wasted that time. He stated, "I know what you want me to do, why are you on me?" He then proceeded to load his vehicle, I returned 20 minutes later Ricky was getting instructions from U-Person Mark McClendon for a route. I stood there until Ricky loaded his vehicle and left for the street.
>
> Approximately 40 minutes after leaving for the street, Supv. Mark Epting received a call from Mr. Moore stating that his scanner did not work. At approximately 11:30 am I took Ricky Moore the parcels he left for route 1236 along with another scanner. I found Mr. Moore in the 6000 block of W. Cabanne Pl. sitting on the steps of a residence. He was a few houses from the vehicle, I instructed him to return to the vehicle to transfer the parcels he left. Mr. Moore replied in a loud and rude tome, "Why the f— didn't you give them to me in the first damn place? You

2

need to do your damn job." I replied, "You need to stop cursing me before you get yourself in a lot of trouble." He replied, "That's what you came out here for in the first place, I'm a grown man and you need Jesus. He began throwing the parcels in his vehicle and continuing to respond in a loud and rude manner making statements such as:

1. How I'ma do all this?
2. I don't even know where these go (parcels)
3. I'm getting really tired of this shit
4. Yeah I know people like you.
5. How I'm suppose to get my uniforms?

He just went on and on. I telephoned Weathers Branch where Mr. Moore was assigned and spoke to Betty Travis, Supv. to discuss Moore's behavior. She could hear his loud and rude tone.

Def. Ex. F.

Ms. Johnson also stated in her memorandum that the scanner which Plaintiff said was not working was found to be working by Supervisor Mark Epting..

Betty Travis, Customer Service Supervisor, stated in a report that she received a phone call from Ms. Johnson on May 13, 2005, in which call Ms. Johnson stated that Plaintiff would not cooperate with her and that she wanted to report Plaintiff's "demeanor on the streets, when she approached him." Ms. Travis further reported that she could hear Plaintiff, "with an elevated voice, shouting his anger out at Ms. Johnson" and that she told Ms. Johnson to "put [Plaintiff] off the clock." Def. Ex. K.

On May 18, 2005, Plaintiff was issued a Notice of Separation for failure to apply himself to his duties and for improper personal conduct. In particular, the Notice of Separation stated:

I regret to advise you that effective at the close of business May 18, 2005 you will be separated from the Postal Service for the following reasons:

FAILURE TO APPLY YOURSELF TO YOUR DUTIES/IMPROPER
PERSONAL CONDUCT

On May 13, 2005, you were assigned to Route 1236 at Giles Station. You were noticed loitering on several occasions, in the office, on the loading dock, and on the

3

street. You had to be instructed at each instance to perform your assigned duties. At approximately 11:30 a.m., Supervisor Carolyn Johnson brought a scanner to you as you called and said yours was not working. She brought parcels to you that you had left at the station. When Supervisor Johnson gave you the parcels, you stated, "Why in fuck didn't they give them to me in the first damn place?" You then put the parcels in the vehicle all the while making rude and disrespectful statement[s] to the supervisor, in a loud voice. Approximately one hour later, you returned to the station stating the new scanner was not working. Supervisor Johnson and Supervisor Mark Epting checked both scanners and found them both to be in good working order.

Def. Ex. B.

The Postal Service has issued a Memorandum to All Employees, Gateway Cluster, which is posted in the work-place in all postal units and stating, in relevant part, that:

> The Gateway Cluster is committed to providing a work environment conducive to providing efficient and economical service to our customers. Toward that end, we must enjoin our efforts in establishing a workplace that is free of systematic persecution by besetting each other with annoyance, threats, demands or profanity.
> ...
>
> Each of us must be prompt, courteous, and obliging in the performance of our duties.
>
> Each of us must attend diligently to our work.
>
> Each of us must refrain from loud talking and the use of profane language.
>
> ...
>
> To instill in our achievements and accomplish our goals, all of us must come together as a team ... treating each other professionally, respectfully and with dignity.

Def. Ex. J.

Steve Freshley, Supervisor, Customer Services, is responsible for issuing a separation notice. The request for separation of Plaintiff was made by Steven Brown after discussion with supervisors and managers including Ms. Johnson. Mr. Freshly interviewed Plaintiff for the position from which he was separated. When he interviewed Plaintiff, Mr. Freshly asked Plaintiff to explain his being fired from a previous job and Plaintiff responded that "it was a problem with a female supervisor." Mr.

4

Freshly counseled Plaintiff by telling him that he would be working with female supervisors and that it was his responsibility to take direction and properly handle conflicts with supervisors, co-workers, and customers. Def. Ex. I.

The Postal Service issued Notices of Separation to at least three other casual employees, two of whom were male and one of whom was female. In particular, a Notice of Separation was issued to Christopher Mallet and Latonya Manuel, on January 21, 2005, for failure to apply themselves to their duties and to Terease Williams on August 9, 2005, for failure to satisfactorily perform her duties. Def. Ex. C-1 to 3.

Plaintiff filed a charge with the EEOC alleging discrimination based on gender, male. In his Amended Complaint filed with this court Plaintiff alleges that he was terminated because he did not comply with sexual advances made by Supervisor Carolyn Johnson.

In the Motion for Summary Judgment Defendant asserts that the Postal Service had a legitimate, non-discriminatory reason for Plaintiff's separation as it properly removed Plaintiff from service in an attempt to promote a pleasant work environment for all employees and to promote the Postal Service's productivity and efficiency. Defendant further contends that Plaintiff "was separated from his casual carrier position solely because of his conduct and use of profanity towards a supervisor." Def. Facts, ¶ 11. Defendant also contends that Plaintiff has failed to state a prima facie case of discrimination on any basis and failed to demonstrate pretext.

## STANDARD FOR SUMMARY JUDGMENT

The court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The

substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. See also Fenny v. Dakota, Minn. & E.R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003) (holding that an issue is genuine "if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party").

A moving party always bears the burden of informing the court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of his pleading. Id. at 256.

In passing on a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in its favor. Id. at 255; Raschick v. Prudent Supply, Inc., 830 F.2d 1497, 1499 (8th Cir. 1987). The court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." Id. at 252. "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). With these principles in mind, the court turns to an analysis of Defendants' motions.

## DISCUSSION

As stated above, Plaintiff alleges that he was discharged based on his gender, male, and in retaliation for allegedly not complying with Ms. Johnson's sexual advances. "Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3, makes it unlawful for an employer to discriminate against

6

an employee, for among other things, 'because he has opposed any practice made an unlawful employment practice by this subchapter.'" Buettner v. Arch Coal Sales Co., 216 F.3d 707, 713 (8th Cir. 2000) (quoting 42 U.S.C. § 2000e-3). "In order to make out a case of retaliation under Title VII, [a plaintiff] must show that [he] engaged in an activity protected by that act, that there was some adverse action taken against [him] ..., and that a causal connection existed between [his] participation in the protected activity and the adverse employment action." Moisant v. Air Midwest, Inc., 291 F.3d 1028, 1031 (8th Cir. 2002). An adverse employment action is defined as a "tangible change in duties or working conditions that constituted a material employment disadvantage" or a "material change in terms or conditions of [] employment." Id. (citations omitted).

When a plaintiff is unable to put forth direct evidence of unlawful employment discrimination, the Eighth Circuit applies the burden-shifting framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See Buettner, 216 F.3d at 713; Breeding v. Arthur J. Gallagher and Co, 164 F.3d 1151, 1156 (8th Cir. 1999). The court notes that Plaintiff in the matter under consideration does not present direct evidence of discrimination. McDonnell Douglas and it progeny, therefore, apply to Plaintiff's claims of gender discrimination and retaliation under Title VII. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-07 (1993); Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-56 (1981); Ryther v. KARE 11, 108 F.3d 832, 836-38 (8th Cir.1997) (en banc).

Under the burden-shifting framework, a plaintiff filing a complaint pursuant to Title VII must first present evidence that will establish a prima facie case. See Buettner, 216 F.3d at 713; Breeding, 164 F.3d at 1156; McCullough v. Real Foods, Inc., 140 F.3d 1123, 1126 (8th Cir. 1998). If the plaintiff is successful in establishing a prima facie case, a rebuttable presumption of discrimination arises. See id. at 1126; Hill v. St. Louis Univ., 123 F.3d 1114, 1119 (8th Cir. 1997). The burden then

shifts to the employer, who must articulate a nondiscriminatory reason for the adverse employment action. See McCullough, 140 F.3d at 1126. Once the employer articulates a nondiscriminatory reason, the presumption of discrimination disappears entirely. The plaintiff must then show that he has sufficient admissible evidence from which a rational trier of fact could find that the employer's proffered nondiscriminatory reason is either untrue or was not the real reason for the action *and* that intentional discrimination was the real reason. See McCullough, 140 F.3d at 1127; Hill, 123 F.3d at 1119.

At all times, the plaintiff retains the ultimate burden of persuasion to show the adverse employment action was a result of intentional, unlawful discrimination. See Kobrin v. University of Minnesota, 121 F.3d 408, 413-14 (8th Cir. 1997); Rothmeier v. Inv. Advisers, Inc., 85 F.3d 1328, 1336-37 (8th Cir. 1996). Therefore, to succeed against a motion for summary judgment, the plaintiff must present sufficient evidence of intentional discrimination by the employer to create a genuine issue of fact for trial. See Rothmeier, 85 F.3d at 1337.

First, the undisputed facts establish that Ms. Johnson, whom Plaintiff alleges made sexual advances toward him, did not make the decision to terminate Plaintiff. Additionally, Plaintiff has failed to articulate any details or facts regarding the alleged sexual advances, such as the date upon which they were made, the nature of the advances, and/or the location. Second, Defendant has articulated legitimate, non-discriminatory reasons for terminating Plaintiff. See McCullough, 140 F.3d at 1127; Hill, 123 F.3d at 1119. Third, it is undisputed that Plaintiff engaged in the conduct proffered by Defendant as the reasons it separated him and that he violated Defendant's policies in regard to the conduct of employees. Fourth, Defendant has proffered evidence that it terminated both male and female employees for reasons similar to the reasons Plaintiff was terminated. Fifth, Plaintiff has not suggested any admissible evidence from which a rational trier of fact could find that

8

Defendant's proffered nondiscriminatory reason is either untrue or was not the real reason for separating Plaintiff.  See McCullough, 140 F.3d at 1127; Hill, 123 F.3d at 1119.  In fact, Plaintiff has failed to proffer any evidence suggesting that his termination by Defendant was a result of unlawful discrimination.  See Kobrin, 121 F.3d at 413-14; Rothmeier, 85 F.3d at 1336-37.  As such, the court finds that Plaintiff has failed to state a prima facie claim for discrimination.  See Buettner, 216 F.3d at 713.  The court further finds, therefore, that Defendant's Motion for Summary Judgment should be granted.

## CONCLUSION

For the reasons articulated above, the court finds that Plaintiff has failed to state a prima facie cause of action for discrimination based on gender and/or retaliation for failing to comply with sexual advances of a supervisor.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by Defendant John E. Potter, Postmaster General, is **GRANTED**; Doc. 24

**IT IS FURTHER ORDERED** that a separate Judgment shall issue incorporating this Memorandum Opinion.

> /s/Mary Ann L. Medler
> MARY ANN L. MEDLER
> UNITED STATES MAGISTRATE JUDGE

Dated this 31st day of  August, 2007.